THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PAUL AARON SAVCHENKO,<br><br>Plaintiff,<br><br>v.<br><br>ICICLE SEAFOODS, INC. and L.F.K., INC.,<br><br>Defendant.<br>_____<br>ICICLE SEAFOODS, INC. and L.F.K., INC.,<br><br>Third-party Plaintiffs,<br><br>v.<br><br>KARI MARIE FISHERIES LLC; and MARK HJELLE,<br><br>Third-party Defendants. | CASE NO. C11-2081-JCC<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter was tried to the Court beginning on October 15, 2013. The claims presented for adjudication were as follows:

(1) Is Icicle Seafoods entitled to contribution payments made for any injuries, flare-ups, or aggravations of injury to Paul Savchenko that occurred aboard the F/V KARI MARIE and, if so, what amount?

(2) Was the F/V Karie Marie unseaworthy, and correspondingly liable for any injuries to Paul Savchenko that he sustained or aggravated while on board the F/V KARI MARIE?

After bench trial and pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

On September 18, 2010, while working on board the F/V ADVENTURE, Plaintiff Paul Aaron Savchenko ("Savchenko") was injured after he stepped on a board covering a lazarette. The board broke, causing Savchenko to fall approximately eight feet to the bottom of the lazarette, hit a freezer, flip upside down, and land on his head. The faulty board was an "iron bark deck board" that appeared functional from above, but disguised a weakness or defect underneath the board, invisible to Savchenko at the time of the accident. Thus, Icicle failed to ensure that the F/V ADVENTURE was a safe working environment. Savchenko's injury was diagnosed and treated at the Swedish Emergency Center as a rib contusion, back strain, closed head injury, and fall.

Just before the injury, Savchenko had been offered a job by the captain of the F/V ADVENTURE, owned by Third-Party Plaintiff Icicle Seafoods ("Icicle"), to work as a seaman aboard the F/V ADVENTURE, as well as complete pre-season repairs on the vessel, as was customary. However, he had not completed the necessary paperwork and been officially hired by Icicle at the time of the injury. Leauri Moore, Director of Human Resources and Risk Management at Icicle Seafoods, Inc., testified that Icicle's decision, immediately after Savchenko's accident, to notify him that he would not be officially hired was not motivated by a desire to avoid the payments they would owe if he were employed by Icicle as a seaman, but rather because he had neglected to mention some previous criminal convictions on his application form.

Savchenko experienced both left and right-sided pain after his September 2010 accident

aboard the F/V ADVENTURE, but before his employment aboard the F/V KARI MARIE, owned by Third-Party Defendant KARI MARIE FISHERIES, LLC ("Kari Marie").

Between September 10, 2010, and April 4, 2011, Icicle paid Savchenko $6,281.40 in time loss and $8,469.17 in medical benefits. At that time, he was paid under the Longshore and Harbor Workers' Act, rather than as a seaman.

Savchenko joined the F/V KARI MARIE on January 15, 2012 as a deckhand. He believed that he had recovered from his September 2010 injury, and told John David Perkins, co-skipper with Dean Gribble of the F/V KARI MARIE at that time, that his back was fine. On January 16, 2012, Savchenko suffered a flare-up of his September 2010 Icicle injury while working on board the F/V KARI MARIE. Specifically, he tweaked his back throwing cod, a task he had performed numerous times before without any problems. Following this flare-up, Savchenko took time off to rest, and was limited to light duty. Once he felt better, he decided to set pots, a task he had performed numerous times before without any problems. However, while engaged in that activity, on February 6, 2012, Savchenko suffered another flare-up of the injury. Finally, Savchenko suffered a third flare-up or aggravation sometime later on, while lifting a heavy object. He did not remember what, specifically, the heavy object was, and could not remember the precise date that this final flare-up occurred. In May 2012, after the final flare-up, Savchenko left the F/V KARI MARIE.

Given Savchenko's early injury in September 2010, and the fact that Kari Marie provided light work after his flare-ups or aggravations, Kari Mari was not at fault for any flare-ups suffered during his work on board the F/V KARI MARIE. The F/V Kari Marie was staffed by two skippers and six deckhands, and so was not short-staffed. To the extent Savchenko suffered additional flare-ups or aggravations on board the F/V KARI MARIE, those flare-ups were the consequence of his September 2010 injuries on board the F/V ADVENTURE.

In June 2012, after leaving the F/V KARI MARIE, Savchenko returned to work on another vessel, the F/V SKAL, not owned by or affiliated with any party in this litigation.

Savchenko returned to work again in July 2012, when he was the captain of the F/V DOUBLE TROUBLE. While Savchenko continued to suffer from back pain on the F/V SKAL, he did not suffer back pain on board the F/V DOUBLE TROUBLE.

Savchenko did not submit any medical bills to be paid by Kari Marie. However, Kari Marie paid Savchenko $1,050.00 in maintenance and $17,707.09 in unearned wages for the period between May 7, 2012, the date Savchenko left the F/V KARI MARIE, and June 7, 2013, the date Savchenko returned to work on the F/V SKAL. Savchenko did not seek any further benefits from Kari Marie.

Dr. John Burns, Icicle's retained medical expert, testified that Savchenko's injuries were not extremely serious. He said that Savchenko should have fully recovered within four to six weeks following the September 2010 Icicle injury. Additionally, he said that Savchenko should have fully recovered within four to six weeks following any of the injuries allegedly sustained on board the F/V KARI MARIE. Dr. Burns testified that it would not surprise him to learn that Savchenko went back to work after his employment with Kari Marie; he would not find it unusual if Savchenko went back to work in July 2012 and had no pain at that time; and he would not find it unusual if Savchenko was a fisherman in July 2012.

The last time Savchenko took medication for his back was in July 2013. He has not seen a doctor or other medical provider since that time. He has no plans to see a medical provider about his back in the future.

Icicle paid $29,981.70 in cure or medical benefits to providers for Savchenko, and $18,343.96 in maintenance benefits, for the period between May 2012 to May 2013. In 2013, Icicle settled all of Savchenko's claims against it for the sum of $450,000, including claims for marine personal injury, maintenance and cure, unseaworthiness, and worker's compensation. Kari Marie was not a party to the Global Settlement and Release of All Claims executed by Savchenko, and Savchenko has not released or discharged any of his claims against Kari Marie.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction over this claim under 46 U.S.C. § 3010, 28 U.S.C. § 1333, and 28 U.S.C. §1367. Original Plaintiff Savchenko filed this maritime and admiralty suit against Icicle seeking damages for personal injuries and maintenance and cure associated with the Septembr 2010 accident. Pursuant to Federal Rule of Civil Procedure 14(a) and this Court's Order, Icicle impleaded Kari Marie as a third-party defendant, asserting that Kari Marie was liable to Savchenko and/or Icicle for new or aggravating injuries Savchenko suffered while employed by Kari Marie as a crab fisherman aboard the F/V KARI MARIE from January to May 2012.

### A. Motion to Exclude Expert Testimony

The Court GRANTS in part Icicle's motion to preclude expert testimony, (Dkt. No. 84), and the testimony of Douglas Lakin and Susan Sorosky is admitted only insofar as it is admissible as testimony by a treating physician. *See Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011).

### B. The Settlement

Icicle is not entitled to contribution from Kari Marie for its settlement with Savchenko because Savchenko has not released his claims against Kari Marie. The Supreme Court has held that, in the admiralty and maritime context, if a single defendant settles with the plaintiff, the plaintiff's recovery from any remaining non-settling defendants is reduced by the settling defendant's proportionate share of fault. *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 209, 217 (1994). Under that rule, Savchenko is entitled to sue Kari Marie for any additional damages, and any recovery he makes will be reduced only by Icicle's proportionate share of fault, and not by the amount of Icicle's settlement. Thus, were Kari Marie partially at fault, and were it to be ordered to contribute to Icicle's settlement with Savchenko, the possibility of a double recovery against Kari Marie would arise if Savchenko subsequently sued Kari Marie.

Both the Eleventh Circuit and the United States District Court for the Northern District of

California have held that, in the admiralty and maritime context, a settling defendant may not sue a non-settling defendant for contribution absent a release of all claims by the plaintiff against the non-settling defendant. *See Murphy v. Florida Keys Elec. Coop. Ass'n*, 329 F.3d 1311, 1318 (11th Cir. 2003)("Th[e] . . prohibition against contribution from a settling party does not preclude a contribution suit against a tortfeasor who is released by the settlement even though not a party to it."), *In re Complaint of Taurus Marine, Inc. v. Marin County*, 2012 AMC 317, *13-23, 2012 U.S. Dist. LEXIS 16285 (N.D. Cal. 2012)(discussing the issue in depth). Moreover, the Fifth Circuit has held that where a release of claims against a non-settling defendant is signed, a settling defendant may sue the non-settling defendant for contribution. *See Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603 (5th Cir. 2010)("*AmClyde* does not prevent an action for contribution for a settling tortfeasor who obtains, as part of its settlement agreement with the plaintiff, a full release for all parties."); *see also Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 187 (5th Cir. 2009)("The Supreme Court's reasoning [in *AmClyde*] also precludes a settling tortfeasor from seeking contribution from a nonsettling tortfeasor."); *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 185 (5th Cir. 2009)(holding that a settling tortfeasor may not sue a nonsettling tortfeasor for contribution in maritime even after the plaintiff assigns its claim to the settling tortfeasor). The Court follows the rule articulated in those cases.

The Court has considered Icicle's arguments to the contrary, and finds them meritless. In entering into a settlement with Savchenko that did not release Savchenko's claims against Kari Marie, Icicle extinguished only its own proportionate share of fault, and is not entitled to sue Kari Marie for contribution for any amount paid by Icicle pursuant to that settlement.

### C.  Negligence, Unseaworthiness, and Liability

Icicle failed to establish by a preponderance of the evidence that the F/V KARI MARIE was unseaworthy or that Kari Marie was negligent, and failed to establish by a preponderance of the evidence that any alleged unseaworthiness or negligence of the F/V KARI MARIE was a

proximate cause of any of Savchenko's alleged injuries or alleged flare-ups of his back.

At the time of his injuries aboard the F/V ADVENTURE, on September 18, 2010, Savchenko was serving as a seaman, performing the traditional duties of a seaman. Icicle's negligence and the unseaworthiness of Icicle's vessel, the F/V ADVENTURE, were proximate causes of Savchenko's injuries, including back problems that persisted through and after Savchenko's service aboard the F/V KARI MARIE. Icicle failed to establish that any maintenance and cure payments Icicle made to Savchenko related to an injury Savchenko sustained on board the F/V KARI MARIE. Kari Marie satisfied any obligation it owed to Savchenko with its payments for the period between May 2012 and June 2012.

Icicle is not entitled to any contribution for any amount of maintenance and cure it paid Savchenko, as Kari Marie, an innocent vessel owner, is not ultimately responsible for the maintenance and cure obligation incurred because of the fault of Icicle. *See, e.g.*, *Dizard v. Lynn*, 1998 AMC 795, 799–800 (W.D. Wash. 1997) ("'[I]t would be wrong to assess damages against a non-negligent or passively negligent shipowner for loss or injuries suffered solely as the result of active negligence of another party.'"(quoting *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969))); *Gore v. Clearwater*, 378 F.2d 584, 587 (3d Cir. 1967) ("[W]e conclude that the latter shipowners are entitled to reimbursement in full from the former shipowners which have the primary obligation arising out of negligence and unseaworthiness."); *Mead v. Skip Fisheries, Inc.*, 385 F. Supp. 725, 728 (D. Mass. 1974) ("[T]he second vessel should be indemnified by the first when the disability was due to the actionable fault of the first."); *Gauthier v. Crozby Marine Serv., Inc.*, 499 F. Supp. 295, 300 (E.D. La. 1980) ("I will . . . apportion liability equally between the two ostensibly innocent employers . . . . Of course, if Crozby is later found to be culpable for negligence or unseaworthiness, it will be liable for all of the maintenance and cure attributable to the groin injury.").

Savchenko's future medical expenses are not recoverable from Kari Marie because: 1) any amount paid by Icicle to settle Savchenko's future medical expenses is speculative, and is

FINDINGS OF FACT AND CONCLUSIONS OF
LAW
PAGE - 7

not reflected in any evidence presented of Icicle's settlement with Savchenko[1]; 2) it is speculative as to what future medical benefits (if any) Savchenko had to incur at the time of the settlement; and 3) the evidence presented fails to prove that Kari Marie caused any problems for which Savchenko would incur future medical expenses.

Savchenko's net economic losses are not recoverable from Kari Marie because: 1) the evidence presented fails to establish that Kari Marie was at fault in any way in causing any of Savchenko's alleged injuries; 2) the amount (if any) that Icicle paid to settle fault-based claims is speculative and not reflected in any evidence presented of Icicle's settlement with Savchenko; and 3) the evidence presented fails to prove that any of Savchenko's speculative net economic losses are associated with any of his alleged flare-ups on the F/V KARI MARIE.

All remaining claims in this action are dismissed.

A judgment consistent with these findings and conclusions will be entered in favor of Third-Party Defendant Kari Marie.

SO ORDERED this 31st day of October 2013.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[1] In other words, Icicle may have had more than one motive for settling, and the proportion of Icicle's settlement attributable to future medical benefits, rather than (for example) avoiding the threat of a large jury award due to Icicle having withdrawn its employment offer to Savchenko immediately after his injury, is impossible to determine.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE - 8